UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-734 (JEB) |
| v. : | |
| : | |
| LAWRENCE DROPKIN, JR., : | |
| : | |
| Defendant : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Lawrence Dropkin, Jr., by and through his attorney, Andrew Leven, Esq., respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the defendant requests that this Court impose a noncustodial sentence in this case consisting of some combination of probation/community service and/or home detention.

**The Person**

When sentencing Mr. Dropkin, the Court is considering both the offense and the person.

We are all formed to varying degrees by our life's experiences, which then often play a role in the decisions that we make. Not all of Mr. Dropkin's life experiences were bad. For example, Larry was a successful college athlete. He was deeply loved by his mother, and by his siblings. Mr. Dropkin is a fundamentally honest person. He had a happy (albeit at times unusually difficult) childhood. See PSR par. 52.[1] And as an adult, Mr. Dropkin has demonstrated a very strong work ethic and sustained commitment to economic self-sufficiency. See PSR, pars. 79 – 83.

But as an adolescent, Larry's formative experiences were far less positive. See PSR pars. 51 - 62. Indeed, by any objective measure they were destructive. Those stark, painful experiences were generally corroborated by the Probation Department at PSR pars. 61 and 62. I

---

[1]   Citations are to the Draft PSR prepared 9/1/22, as a Final PSR has not yet been filed.

1

know that the Court has read the PSR with great care and will not detail those very painful experiences here. Except to say that – without putting too fine a point on it - Mr. Dropkin has been "on his own since age 13." PSR par. 54.[2]

The circumstances of Larry Dropkin's life do not excuse the very poor decisions he made on January 6th. These circumstances do, however, provide some context for understanding the person who made them.

**The Offense**

Mr. Dropkin was in an excited state on January 6th. Although at pg. 3 of its Sentencing Memorandum the Government may be suggesting otherwise, Mr. Dropkin did not come to the Capitol with the intention of doing anything more than protesting the election results. But he entered the Capitol of his own volition. By himself, and not as part of an organized group. Those poor decisions have been allocuted to in open court. And Larry has learned from them.

Since January 6th Mr. Dropkin has acknowledged the gravity of that event in at least three important ways. First, by foregoing the defense of "invitation" into the Capitol, which was accepted by another judge in this Court as the basis for an acquittal. Second, by Mr. Dropkin's statements to Probation (and, through that medium, to this Court); specifically, that

> [g]oing to the Capitol was absolutely the wrong way to protest. The right way is to peacefully express political views in public spaces where that expression is permitted. I did not do so on that day. I made the wrong choice and deeply regret having made it. I pleaded guilty because I am accountable for that choice.

PSR, par. 19.

---

[2] It also bears mention here that both Larry's father and step mother were alcoholics, PSR par. 54, and that much of Mr. Dropkin's relatively low grade past encounters with law enforcement have, at their root, an unhealthy relationship with alcohol. Compare PSR, pars. 54, 74 with PSR, Part B, The Defendant's Criminal History (passim).

Third, by being a witness (under oath at his plea allocution and now) to the physical violence, property destruction, and chaos that took place on that day. See id. At a time when many have sought to minimize January 6th for their own purposes, Larry Dropkin has made a different decision.  He has chosen to tell the truth.

**The Price Already Paid**

The costs of Mr. Dropkin's very poor choices on January 6th have been significant, and are ongoing.  He has lost friends, family relationships, job prospects, his insurance carrier, his bank, his broker, and his Lyft account.[3]  Economically, the cost to Mr. Dropkin (who is 46 years old) of being investigated, charged, and now sentenced represents substantially more than 10% of his entire life savings, and the SBA has also rejected Larry's application for flood relief based on the January 6th guilty plea.  Emotionally, since that day Larry Dropkin's last thought before going to bed, and his first thought when waking up, has often been what will happen to him as a result of his poor choices on January 6th. See PSR, par. 71

**Guidelines Analysis**

The Probation Department has calculated a total offense level of 4 (base offense of 6, minus 2 levels for acceptance of responsibility).  PSR, pars. 24 – 36. Mr. Dropkin did not object to that calculation.  The Government has, arguing for a total offense level of 8 (base offense of 10, minus 2 levels for acceptance of responsibility), PSR, par. 24, fn3, based on the statutory elements of one of the Class A and Class B misdemeanors to which he has pleaded.

As the Government notes, even if their legal argument is accepted, Mr. Dropkin would remain at a Zone A (0-6). See id. Even so, it is worth noting here that, in substance, the four misdemeanors (two Class A and two Class B) to which Mr. Dropkin has pleaded guilty can fairly

---

[3] In particular, following Mr. Dropkin's guilty plea he was notified by Liberty Mutual (his auto insurer) that they would not insure his vehicle, by Chase Bank that they would no longer maintain an account relationship with him, and by Lyft that he could no longer access their services. Fidelity has also ended their brokerage relationship with Mr. Dropkin.  Each of these relationships was terminated based on his participation in the events of January 6th.

be understood as describing a single event in four different ways.  As demonstrated in his plea allocution and probation interview, Mr. Dropkin's decision to not sign a plea agreement in this case does not reflect an unwillingness to be held accountable.  Rather, it is reflection of his discomfort in assisting the government's pursuit of other people – that is, others whose identity and circumstances were unknown to him.

We are not privy to the Government's interactions with other similarly situated non-violent January 6th defendants, but assume that it has mirrored those experienced by us.  In particular, we presume that many (if not all) of the individuals who pleaded guilty to a single Class B misdemeanor pursuant to a plea agreement were told that they would otherwise be charged with the same 4 misdemeanors to which Mr. Dropkin has pleaded guilty.  If so, a statutory (as opposed to USSG) relevant conduct analysis encompassing intent to disrupt would have been warranted in each such case.  If in those single Class B cases the Government did not press for one, then we submit that the core sentencing goal of consistency – that is, treating similarly situated individuals similarly – is best served by a USSG Advisory score of 4, as set forth in PSR pars. 24 – 36.[4]

**Statutory Analysis**

Though one is advisory and the other statutory, both the USSG and 18 USC Section 3553(a) share the core purpose of treating similarly situated defendants   similarly.  Under the USSG, we see that output – Zone A, 0-6.  The appropriateness of this sentencing floor (and

---

[4]   At pages 18 and 19 of its Sentencing Memorandum, the Government also references several of Mr. Dropkin's prior encounters with the justice system.  One of them, regarding solicitation, resulted from an employer's failure to obtain a permit.  The description of another - as "disorderly conduct/fighting" - is revealed in the PSR as being something of a misnomer.  PSR, par. 40. There was no fighting, or hint of physicality.  See id. Rather, Mr. Dropkin did not give his name to an officer. Id. The public urination charges cited by the Government both involved alcohol use. See PSR, pars. 39 and 41, compare to PSR, pars. 54 (father and step mother's alcoholism) and 74 (Larry's misuse of alcohol began in High School) – which is no sense excuses these episodes, but does put them in context.  In terms of severity, the entirety of Mr. Dropkin's criminal history resulted in a "zero" criminal history score under the USSG.

4

ceiling) is reinforced by the many misdemeanor sentences under Section 3553(a) imposing terms of probation/home detention/ community service to similarly situated defendants.[5]

A second core, shared objective that underlies the USSG and is explicitly required by Section 3553(a) is proportionality, which, can reasonably understood as a foundational element of justice. To achieve it, sentencing courts are to impose a sentence "sufficient, but not more than necessary," to achieve the objectives set forth below.

It is axiomatic that every case presents its own facts and every defendant his own circumstances. We submit that the facts and circumstances presented here should be applied as follows:

### To Deter Criminal Conduct by Others

We cannot know the mindset of others, or what impact (if any) Mr. Dropkin's sentence will have on them. But we do know this. We live in an afactual time. As previously stated, when many have sought to minimize January 6th for their own purposes, Larry Dropkin has made a different decision. He has chosen to tell the truth about what he saw that day.

It also bears emphasis here what this isn't. This is not a theft case, in which the threat of imprisonment is what may prevent others who have not yet stolen from stealing. Here we deal here with a situation in which many ordinary people who politicize and/or empathize with January 6th see themselves as law abiding. Anyone with the desire to do so can – through video (broadcast live, and subsequently) – accurately understand those events. But that is not where a segment of this nation is, and many have apparently decided against seeking that understanding.

Larry Dropkin is not running for political office. He is simply telling the truth. Larry's description of that day is yet another data point directly contrary to what is being purveyed by a segment of our political class. The facts related by a person who supports former President Trump

---

[5] Here, the Government's seeks 30 days incarceration, probation, community service, $500 in restitution, and no fine. The excel sentencing outcome table provided by the Government to the Court in this case lists scores of misdemeanor defendants who have been sentenced to some combination of probation, home detention and community service. Those defendants were also required to pay $500 in restitution and, at times, a modest fine of substantially below $10,000.

and was there may not move anyone off a false narrative. But it might.  And it should, regardless of the sentence imposed.

### To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

We do not deny the seriousness of this offense, or Mr. Dropkin's participation in it.

On the one hand, he went into the Capitol soon after the initial breach, stayed too long, and while there wandered into places he should not have been.

On the other, the PSR in this case and (1) the many hours of CCTV videos, (2) the many other cases before this Court, and (3) the January 6th Commission's hearings do, in combination, generally provide a baseline for assessing the relative severity of Mr. Dropkin's misconduct. Unlike others, Mr. Dropkin did not destroy property.  He did not engage in violence.  He did not boast of his participation or suggest that he had been "invited" into the Capitol by sympathetic police officers.  And - although highlighting it is a jarring reflection of our times - Mr. Dropkin's decision to not minimize his guilty plea or otherwise undercut our judicial system distinguishes him from others who have appeared before various judges of this Court. Having plainly taken the wrong road, Larry Dropkin has since dusted himself off and taken the right one.  He is responsible for his actions.  He has not wasted prosecutorial or judicial resources.  And he has told the truth.

By any relative measure, he is in the low end of the misconduct of January 6th.  For which Mr. Dropkin has already paid a significant price.[6]

### Protecting the public from further crimes by Mr. Dropkin

Mr. Dropkin has plainly stated his accountability, and remorse, for his actions.  The Government has, in effect, accepted those statements as true. So has the Probation Department. Indeed, USPO Willett observes that:

---

[6]    See subsection "Cost," infra.

> *it is noteworthy that the defendant's specific conduct in this case [which did not involve acts of, or support for, violence against law enforcement and/or destruction of Capitol property]; his expressions of remorse; and his positive pretrial compliance, are factors which, considered both individually and collectively, suggest Mr. Dropkin is amenable to positive change.*

PSR, par. 128 (italics added).

USPO Willett is correct. Larry Dropkin is, in fact, amenable to positive change. It follows that there is no reason to believe Mr. Dropkin will recommit.

One reason why is the intersection of expectation and fact. Mr. Dropkin expected that his door would be broken down by a swat team, he would be detained in a black site, be required to dissipate his entire life savings to make bail, and then be sentenced by a biased judge sitting on a politicized bench. What Mr. Dropkin has instead experienced is professionalism, courtesy, and objectivity. In the event, his door was not broken down. There was no swat team. There was no rendition. Mr. Dropkin self-surrendered and was immediately released on an ROR bond. He was treated courteously and professionally by the FBI, Probation, two Magistrate Judges, and AUSA Amore. He will now be sentenced by an apolitical court.

As previously noted, Larry Dropkin does not wish to assist law enforcement prosecute others whom he does not know, and whose specific circumstances are unknown to him. But he has now experienced an unexpected reality. Larry Dropkin can no longer entertain the false expectations described above, which reflect an inaccurate world view that played a role in his decision to enter the Capitol.

And there has been a sea change in how he will express his political views.

**Request for Noncustodial Sentence**

Mr. Dropkin's guidelines sentence of Zone A (0-6) is well supported by the many misdemeanor sentences under Section 3553(a) imposing terms of probation/home detention/

7

community service on similarly situated defendants.  Under the facts and circumstances present here, a noncustodial sentence imposing some combination of those three elements fully accounts for both sides of the ledger; that is, a low end nonviolent January 6th offender who remained in the Capitol too long, wandered too far, and has since meaningfully come to terms not only with our system of justice but also with himself.

We also request that if a either a fine or restitution is imposed, the amount be consistent with those imposed on other similarly situated defendants.[7]

                                        Respectfully Submitted,

                                        *s/ Andrew D. Leven*
                                        Andrew D. Leven
                                        Counsel to Larry Dropkin, Jr.
                                        Admitted *Pro Hac Vice*, Bar Id: NJ038
                                        Dilworth, Paxson LLP
                                        2 Research Way
                                        Princeton, NJ 08540
                                        (609) 987-6662
                                        aleven@dilworthlaw.com

---

[7]    As of 3/24/22, the Government's chart indicates that $500 in restitution has often been imposed, with fines rarely levied and, when imposed, in no case exceeding $5,000.

**CERTIFICATE OF SERVICE**

On this 3rd day of October, 2022, a copy of the foregoing conformed Sentencing Memorandum (having previously been provided to AUSA Amore and the Court as a letter brief) was served upon all parties listed on the Electronic Case Filing (ECF) System.

*s/ Andrew D. Leven*
Andrew D. Leven
Counsel to Larry Dropkin, Jr.
Admitted *Pro Hac Vice*, Bar Id: NJ038
Dilworth, Paxson LLP
2 Research Way
Princeton, NJ 08540
(609) 987-6662
aleven@dilworthlaw.com